IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FORREST BARFIELD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | No. CIV-16-779-F |
| v. | ) | |
| | ) | |
| JOE ALLBAUGH, Interim Director, | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se* and *in forma pauperis*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Manslaughter in the First Degree after former conviction of a felony entered against him in the District Court of Kiowa County, Case No. CF-2014-498. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR_"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

Mr. Bell, whom Petitioner had known for three or four years, approached Petitioner at a convenience store in Snyder, Oklahoma, and asked him for money. Petitioner and Mr. Bell later met at Mr. Bell's mother's property to search for scrap metal. Instead of scrap metal, the men found two antique wheels. Petitioner offered Mr. Bell forty dollars for the

1

wheels, but he only had thirty-five dollars in cash with him. Petitioner paid Mr. Bell the thirty-five dollars and told Mr. Bell that he would pay him the remaining five dollars after Petitioner sold the wheels. That same day, Petitioner and his girlfriend, Ms. Bailey, drove to Altus, Oklahoma, where Petitioner sold the wheels for fifty dollars.

Three days later, on October 2, 2013, Petitioner, along with Ms. Bailey, went to the residence of Mr. Cummings in Snyder, Oklahoma. Mr. Cummings, a friend of Petitioner's, lived at this residence with his mother, Ms. Fox. Mr. Bell, who was also a friend of Mr. Cummings, arrived at the Cummings/Fox residence soon after Petitioner and Ms. Bailey arrived.

Mr. Bell, who appeared to be intoxicated, indicated to Mr. Cummings that he was going to fight Petitioner because Petitioner owed him money. While talking to Mr. Cummings and Petitioner, Mr. Bell became loud and aggressive. Petitioner and Ms. Bailey got into Petitioner's vehicle and attempted to leave, but before they could leave the property Mr. Bell began hitting Petitioner with his fist through the driver's side window. Petitioner then grabbed Mr. Bell's arm and drug Mr. Bell along the side of the vehicle for a distance of twenty to thirty feet. When he released Mr. Bell, Mr. Bell fell to the ground. Petitioner could not leave the property because Mr. Bell's vehicle was blocking the driveway.

Mr. Bell got into his vehicle and rammed his vehicle into the front of Petitioner's vehicle. Mr. Cummings told Mr. Bell to leave the property and that if he came back Mr. Cummings would fight him. Mr. Bell left the property but later returned with another individual.

Mr. Cummings then hit Mr. Bell with his fist, and he and Mr. Bell began fighting each other with their fists. Mr. Cummings fell to the ground, and Mr. Bell stood over him, still hitting Mr. Cummings. Petitioner approached the two men, and Mr. Cummings thought that Petitioner hit Mr. Bell in the stomach. However, instead of hitting Mr. Bell, Petitioner stabbed Mr. Bell twice with a knife. Although Mr. Bell continued fighting with Mr. Cummings for a short while, Mr. Bell then fell to the ground and later died as a result of the knife wounds. After Mr. Bell fell on the ground, Petitioner asked Mr. Cummings to lie and tell the police that he wasn't there.

Petitioner discarded the knife in a ravine beside the property, and the weapon was never found. Mr. Bell did not have a weapon. Mr. Cummings testified that he was not afraid Mr. Bell was going to kill him because he had been in fights with Mr. Bell prior to this fight and he and Mr. Bell always shook hands when the fight was over.

Petitioner was charged with first degree manslaughter for the killing of Mr. Bell. A jury trial was conducted on the charge on May 27-30, 2014. Several witnesses and Petitioner testified during the trial. Petitioner admitted stabbing Mr. Bell and throwing the weapon away. Petitioner also testified that he had two prior felony convictions.

The jury found Petitioner guilty of committing the manslaughter offense after at least one previous felony conviction and recommended he serve a thirteen-year term of imprisonment. Petitioner was sentenced consistent with the jury's recommendation.

In a direct appeal, Petitioner asserted that (1) his due process rights were violated when the jury was erroneously instructed as to the range of punishment for first degree

manslaughter after a prior felony conviction. Specifically, Petitioner argued that the jury was instructed that the range of punishment for first degree manslaughter after at least one prior felony conviction was ten years to life imprisonment under Okla. Stat. tit. 21, § 51.1(A)(1), but the jury should have been instructed that the proper range of punishment under Okla. Stat. tit. 21, § 51.1(A)(2) was eight years, or twice the minimum punishment for a first time offender, up to life imprisonment.

In his second ground, Petitioner asserted that the evidence presented at his trial was not sufficient to prove he committed the offense of first degree manslaughter beyond a reasonable doubt. Specifically, Petitioner argued that the facts presented at his trial showed that he "act[ed] out of necessity" and "out of fear for himself and the others on the property," and therefore the killing was not "unnecessary," as required by the statute defining first degree manslaughter, Okla. Stat. tit. 21, § 711. Response, Ex. 1 (Brief of Appellant), at 10-11.

In ground three, Petitioner asserted that his due process rights were violated when the trial court failed to accept his proposed jury instruction which would have instructed the jury concerning the definition of the term "unnecessary," an element of the first degree manslaughter charge filed against Petitioner. In his fourth ground, Petitioner asserted that his sentence was excessive. Finally, in ground five, Petitioner asserted that the cumulative effect of all of the errors alleged in the first four grounds deprived him of a fair trial.

The State argued in opposition to each of Petitioner's grounds. Response, Ex. 2 (Brief of Appellee). In a brief summary opinion issued April 23, 2015, the Oklahoma Court of

4

Criminal Appeals ("OCCA") rejected each of Petitioner's grounds and affirmed the conviction and sentence. Response, Ex. 3 (Forrest Kyle Barfield v. State of Oklahoma, Case No. F-2014-498).

In his Petition, and with some additional arguments discussed below, Petitioner has raised the same claims and adopted the same arguments he presented in his direct appeal.

II. Standard of Review of Constitutional Claims

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the

facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. 170, 181 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

III. Ground One - Jury Instructions on Punishment

In his first ground for habeas relief, Petitioner asserts, by merely copying the argument presented in his direct appeal, that his due process rights were violated by the trial court's erroneous jury instructions on the range of punishment for the habitual offender manslaughter charge. Petitioner contends that the range of punishment under Oklahoma law for a first degree manslaughter offense after a prior felony conviction is eight years up to life imprisonment, and therefore the trial court erred when it instructed the jury that the range of punishment for first degree manslaughter after a prior felony convictions is ten years to life imprisonment.

The OCCA rejected this claim in Petitioner's direct appeal. Citing to two Oklahoma statutes, the OCCA found that "the trial court correctly instructed the jury that the punishment range for First Degree Manslaughter, After Conviction of a Felony, was not less than ten years punishment." Response, Ex. 3, at 2 (citing Okla. Stat. tit. 21, § 51.1(A)(1) and

6

Okla. Stat. tit. 57, § 571(2)(j)).[1]

Petitioner is entitled to habeas relief only if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As the Supreme Court has stated on many occasions, the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, federal laws, or treaties. *E.g.*, Mabry v. Johnson, 467 U.S. 504, 507 (1984); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982). Thus, it is well settled that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Estelle v. McQuire, 502 U.S. 62, 67-68 (1991).

Petitioner's claim in ground one of erroneous jury instructions on punishment raises only an issue of state law and fails to state a cognizable claim under 28 U.S.C. § 2254. See Shafer v. Stratton, 906 F.2d 506, 510 (10th Cir. 1990)(claim that state court erroneously interpreted sentencing statute raises only state law issue not reviewable in federal court); Thompson v. McKune, 291 Fed. App'x 870, 873 (10th Cir. 2008)(unpublished op.)("As a general rule, federal habeas relief is not available for errors in the interpretation of state sentencing law."). Courts "will not second guess a state court's application of or

---

[1] Okla. Stat. tit. 21, § 51.1(A) provides that "[i]f the offense for which the person is subsequently convicted is an offense enumerated in Section 571 of Title 57 of the Oklahoma Statutes and the offense is punishable by imprisonment in the State Penitentiary for a term exceeding five (5) years, such person is punishable by imprisonment in the State Penitentiary for a term in the range of ten (10) years to life imprisonment." The offense of first degree manslaughter is an offense "enumerated in" Okla. Stat. tit. 57, § 571. A first offense of first degree manslaughter is punishable by a term ranging from four years of imprisonment up to life imprisonment. Okla. Stat. tit., 21, §715.

interpretation of state law on a petition for habeas unless such application or interpretation violates federal law." Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir. 1994).

Petitioner has made no such showing of a federal law violation here. The OCCA's decision interpreted state law on the issue of the proper range of punishment for a first degree manslaughter offense after a prior felony conviction. Because the OCCA's decision rejecting Petitioner's claim of erroneous jury instructions was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, Petitioner is not entitled to habeas relief concerning this claim.

Petitioner has asserted additional arguments in ground one of the Petition that the "jury was entitled to be given a Burden of Proof instruction" and the jury should have been instructed concerning the possibility of finding Petitioner guilty without an enhancement for a prior felony conviction.[2] Petition, at 21. These additional claims were not raised in Petitioner's direct appeal and are unexhausted. Respondent contends that the unexhausted claims are procedurally barred. However, the Court need not reach the issue of procedural default because the unexhausted jury instruction claims should be denied on their merits. 28 U.S.C. § 2254(b)(2).

"A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so

---

[2]Petitioner testified during his trial that he had two prior felony convictions. (TR vol. III, at 199). The jury was instructed concerning the range of punishment for the offense of first degree manslaughter "after at least one prior [felony] conviction." TR vol. III, at 20.

8

fundamentally unfair as to cause a denial of a fair trial." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995). Petitioner testified in his trial and admitted he had two prior felony convictions. Petitioner did not challenge the validity of his prior felony convictions. The jury was instructed concerning the range of punishment for the manslaughter offense after at least one previous felony conviction. The jury was also instructed that the State bore the burden of proof of establishing Petitioner's guilt beyond a reasonable doubt and that Petitioner's prior convictions could not be considered as proof of Petitioner's guilt but only in determining punishment if the jury found him guilty of committing the manslaughter offense. TR vol. IV, at 13, 20.

Petitioner's trial was not rendered fundamentally unfair by the instructions given to the jury concerning the burden of proof and the range of punishment for the manslaughter offense. Therefore, Petitioner is not entitled to habeas relief concerning his claims of instructional errors in ground one.

IV. Sufficiency of the Evidence

Adopting the argument made in his direct appeal, Petitioner asserts in ground two that the evidence presented at his trial was not sufficient for the jury to have found him guilty of the manslaughter offense beyond a reasonable doubt. The OCCA rejected this claim, reasoning that "the jury heard from many witnesses to the homicide, including [Petitioner]. A rational juror could conclude, beyond a reasonable doubt, that [Petitioner's] use of deadly force to defend another and/or himself from the victim's aggressive behavior was unnecessary." Response, Ex. 3, at 2 (citing Okla. Stat. tit. 21, § 711(3) and Davis v. State,

9

268 P.3d 86, 116 (Okla. Crim. App. 2011)).

A challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). The Supreme Court has clearly established that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson).

To be entitled to habeas relief concerning this claim, Petitioner must demonstrate that the OCCA's decision was contrary to or an unreasonable application of the controlling Jackson standard. Petitioner has not attempted to show that the OCCA's decision conflicted with or unreasonably applied the Jackson standard. Petitioner argues here, as he did in his direct appeal, that the evidence showed he "was acting out of necessity" and "out of fear for himself and the others on the property" when he stabbed the victim and caused the victim's death. Petition, at 22-23.

In Oklahoma, a homicide is manslaughter in the first degree when it is committed "unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed." Okla. Stat. tit. 21, § 711(3). This crime occurs when a defendant was not the initial aggressor and honestly, but unreasonably, believed he or she was in physical danger or that killing was the only way to prevent injury. Davis v. State, 268

P.3d 86, 116 (Okla. Crim. App. 2011).

At Petitioner's trial, there was evidence that Petitioner and the victim, Mr. Bell, had been involved in a physical altercation and Mr. Bell had damaged Petitioner's vehicle. However, Petitioner stabbed Mr. Bell while Mr. Bell and another individual, Mr. Cummings, were involved in a physical altercation using only their fists. Mr. Bell had no weapon, and Petitioner was not involved in the physical altercation between Mr. Bell and Mr. Cummings at the time he stabbed the victim.

Under these circumstances, as the OCCA found, the jury could reasonably find that Petitioner's use of deadly force was unnecessary. Petitioner has not demonstrated that the OCCA's decision was contrary to or an unreasonable application of the Jackson standard. Petitioner is not entitled to habeas relief concerning this claim.

V. Denial of Requested Jury Instruction

Petitioner contends, as he did in his direct appeal, that he was denied a fair trial when the trial court refused to give his requested instruction to the jury defining the term "unnecessary" as part of the jury instructions on the elements of the first degree manslaughter offense.

"Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v.

11

McNeil, 541 U.S. 433, 437 (2004). The habeas petitioner who attacks a state conviction on the basis of the instructions given the jury "has a great burden." Maes, 46 F.3d at 984. Where, as here, the habeas challenge is based on a refusal to give a requested jury instruction, the burden on the petitioner is especially great. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999). This is because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Id. (internal quotations omitted) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Petitioner asserted in his direct appeal that the jury could have been confused regarding the meaning of the term "unnecessary" used in the first degree manslaughter statute and that the jury should have been instructed, as requested by Petitioner's defense counsel, that "a killing is unnecessary if the defendant unreasonably believes he is in danger of injury or that his actions are the only way to prevent injury." Response, Ex. 1, at 17. The OCCA rejected this claim, reasoning "the trial court's instructions on the elements of First Degree Manslaughter were, in our view, self-explanatory. The trial court did not abuse its discretion in refusing to add the definitional language proposed by defense counsel." Response, Ex. 3, at 2.

Petitioner has not shown that he was prejudiced as a result of the instructions given the jury. The jury was instructed concerning the elements of the first degree manslaughter offense, including the element that the death must have been perpetrated unnecessarily by the defendant. TR vol. IV, at 19. Petitioner's argument that the jury might have been confused by the term "unnecessary" is pure speculation. The term "unnecessary" is a

common term without legal complexity.

Petitioner has not demonstrated that his trial was rendered fundamentally unfair as a result of the failure of the trial court to give his requested jury instruction. Petitioner has not shown that the OCCA's decision was contrary to or an unreasonable application of clearly-established Supreme Court jurisprudence, and he is not entitled to habeas relief concerning this claim.

VI. Excessive Sentence

Petitioner contends in his fourth ground for habeas relief, by adopting his argument presented in his direct appeal, that his thirteen-year sentence for the first degree manslaughter conviction is excessive.

"A gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003). In considering the proportionality of a sentence, a state trial court's sentencing decision is accorded "wide discretion," and "challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).

In arguing this claim in his direct appeal, Petitioner sought sentence modification purely on state law grounds. The OCCA found that Petitioner's jury was properly instructed concerning the range of punishment (ten years up to life imprisonment) for his first degree

13

manslaughter conviction. With respect to Petitioner's claim of an excessive sentence, the OCCA concluded that "considering all the facts and circumstances, the sentence recommended by the jury and imposed by the trial court is not shocking to the conscience." Response, Ex. 3, at 2 (citing Rea v. State, 34 P.3d 148, 149 (Okla. Crim. App. 2001)).

Petitioner was sentenced at the bottom end of this range of punishment for his offense to a thirteen-year term of imprisonment. Petitioner has not demonstrated that his sentence is grossly disproportionate to the severity of the crime. Petitioner stabbed the victim twice in the abdomen while the victim was fist-fighting another individual. The victim died as a result of the stab wounds. The OCCA's rejection of this claim was not contrary to or an unreasonable application of clearly-established federal law as determined by the Supreme Court. Hence, no habeas relief is warranted concerning this claim.

VII. Cumulative Errors

In his fifth and final claim for habeas relief, Petitioner asserts that cumulative errors at his trial denied him due process. In support of this claim, Petitioner again adopts the argument presented in his direct appeal. In that argument, Petitioner asserted that "the cumulative effect of all the errors addressed above deprived Mr. Barfield of a fair trial." Response, Ex. 1, at 22.

The Tenth Circuit Court of Appeals has addressed the issue of cumulative errors and explained "that prejudice can be accumulated *disjunctively* - that all a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Grant v. Trammell, 727 F.3d 1006, 1026 (10th Cir. 2013). "In the federal

14

habeas context, cumulative-error analysis 'aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless,' an analysis ... undertake[n] only if there are at least two errors." Fairchild v. Trammell, 784 F.3d 702, 724 (10th Cir. 2015)(quoting Lott v. Trammell, 705 F.3d 1167, 1223 (10th Cir. 2013)). See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998)(cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors").

In this case, the OCCA rejected Petitioner's claim of a denial of due process due to the effect of cumulative errors because it "found no error in the preceding propositions" and thus "no error by accumulation." Response, Ex. 3, at 2-3. Petitioner has not shown that the OCCA's decision was contrary to or an unreasonable application of governing federal law as determined by the Supreme Court, and he is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ___October 20th___, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the

first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___30th___ day of ___September___, 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE